Louis J. Friedman, J.
In this action to recover damages for personal injuries, the parties stipulated prior to the trial that the cause of action of the infant plaintiff as well as the cause of action of the guardian ad litem should be disposed of by the total payment of $10,000. Defendants, however, disagreed as to their respective liability for the payment of said sum. Following a conference with the court, by stipulation placed upon the record, it was agreed that the issue of liability only, as between the respective defendants, should be tried by the court, a jury trial having been waived, and that both defendants were to abide by the court’s decision. On such trial the only testimony submitted was that of each of the drivers of the respective vehicles involved in this collision.
It appears therefrom that on October 31, 1956, at about 2:30 p.m. the defendant Myer was driving his Dodge pick-up truck west on Arlington Avenue in Brooklyn and when he reached the intersection of Schenck Avenue a collision occurred with the automobile of the defendant Iervolino who was driving north on Schenck Avenue prior to the accident. Both Arlington and Schenck Avenues are one-way streets. Both are narrow, approximately 25 or 30 feet in width. There is no traffic light at the intersection but on the south-easterly corner facing Schenck Avenue traffic there is a traffic sign bearing the inscription “Yield Right of Way.” From the photograph of the intersecting corner, marked in evidence, showing this traffic sign, it appears that the sign, which is printed in large letters, is affixed near the top of a tall post and is readily visible even over the top of a passenger automobile. While the evidence does not disclose whether any automobile was parked on the easterly side of Schenck Avenue near the traffic sign at the time of the accident, defendant Iervolino admitted that the sign was readily visible to her. Defendant Myer testified that he was driving at about 20 miles per hour, that a heavy rain was falling at the time and that as he approached Schenck Avenue and looked to his left he saw the Iervolino car about 15 feet south of the sign. He continued towards the intersection and as he got past the easterly curb line of Schenck Avenue he noticed the Iervolino car reach the point where the sign was. The car did not stop or slow up and the collision resulted. Although an attempt was made to contradict his testimony *1062 through the use of prior testimony given by him on an examination before trial, it is evident that the prior testimony was not inconsistent nor contradictory and was substantially the same as that which he gave on the trial.
Defendant Iervolino testified that she - was driving a 1946 automobile on Schenck Avenue, that she stopped for a traffic light at Atlantic Avenue, two blocks south of the scene of the accident and again at Fulton Street, one block south thereof; that as she approached Arlington Avenue she knew that the “ Yield Eight of Way ” sign was on the corner in front of her. She claims that she slowed down in the middle of the block and then came to a full stop about a foot before reaching the sign. She stopped there for a few seconds and then proceeded across the intersection. Her right front window was closed but her left one was open just a little from the top. Although there is no building located directly on the south-east corner so that there is visibility diagonally across the corner into Arlington Avenue, she claims that she could only see for a distance of 10 feet because of the heavy rain. She saw nothing to her right as she started nor did she see any vehicles as she reached the first or southerly curb line of Schenck Avenue, and even while she was crossing the first half of the intersection she saw no vehicle approaching from her right. It was only after she had gotten more than halfway across, according to her own testimony, that she saw the truck driven by defendant Myer about four feet to her right and a few feet ahead of her and almost immediately the accident occurred.
The court concludes from the evidence in the case that defendant Iervolino must be found solely responsible for the happening of the accident. The “Yield Eight of Way” sign was a command which she was bound to obey, and traffic approaching from her right, as the Myer vehicle was, was entitled to the right of way at that intersection. Both parties agreed that at the time of the occurrence there was a very heavy rainfall which defendant Iervolino claims cut down visibility. Such circumstance when considered in the light of the “ Yield Eight of Way” sign, called for the exercise of more caution on the part of defendant Iervolino than if visibility were good. The conclusion is inescapable that she failed to operate her vehicle with the degree of care required by the attendant circumstances at the time of the accident and was therefore negligent.
Defendant Myer, too, was required to exercise extreme caution in the light of the circumstances existing at that corner. However, having the right of way, he was permitted to rely on *1063 it to some extent, .but not to proceed blindly. Nothing in the proof justifies a finding of his negligence and since the court has come to the conclusion that he was in no way responsible for the accident, the complaint is dismissed as to him.
On the basis of the stipulation entered into between the parties, the $10,000 settlement will be paid to the plaintiffs by the defendant Rose Iervolino, also known as Rose Grier, and such payment shall be made in exchange for the usual general release and stipulation of discontinuance, following the entry of an order by this court providing for the manner of payment pursuant to the rules. The execution and delivery of such general release will protect the defendant Myer from any further claims and such defendant is entitled to receive a discontinuance of this action and a duplicate original of the general release delivered to defendant Iervolino. Should a conditional release be delivered to said defendant, defendant Myer shall be entitled to enter judgment dismissing the complaint, with costs.
Upon failure of the defendant Rose Iervolino, also known as Rose Grier, to make payment in accordance with this determination; and pursuant to the stipulation entered upon the record, plaintiff may enter judgment in favor of the infant plaintiff and against the defendant herein held responsible for the sum of $9,000 and in favor of the guardian ad litem and against said defendant for the sum of $1,000, without additional costs, interest or disbursements to the date of the entry of said judgment. The judgment shall also provide that the complaint is dismissed as against the defendant Myer. Payment of the amount of the settlement or the amount of the judgment herein provided for shall be made within 10 days after service upon the attorney for the defendant Iervolino of all necessary closing papers.
Note — The procedure taken herein points up the necessity for machinery for disposition of intercompany differences, where the claim before the court involves more than one defendant with different insurers. In a recent article released to the press by the Association of Casualty and Surety Companies and the National Association of Mutual Casualty Companies, these associations indicated an attempt at speeding up settlement negotiations by providing machinery for arbitrating inter-company disputes where defendants agree that a plaintiff is entitled to a recovery and the amount of such recovery is stipulated by all sides. The statement was released by these associations after more than a year of study by their combined claims committees and under stimulation of a report of the Tern *1064 porary Commission on the Courts which pointed out the many instances where unnecessary litigation develops in cases where codefendants were unable to agree on the proportionate share of a settlement. The associations pointed out that under such circumstances, all members of their associations were ready to arbitrate these intercompany differences, so that there would be no necessity for trials which add to calendar congestion.
Unfortunately, in the foregoing action, the companies involved were not parties to the arbitration agreement, and so the dispute of necessity had to be resolved by a trial. The court wishes to compliment both insurance companies involved upon their co-operation in agreeing to shorten the length of the trial by disposing of plaintiff’s claim and then permitting the court to try just the question of responsibility as between the two defendants. If, under similar circumstances, insurance companies are not willing to arbitrate their differences before their own insurance company panels, they should be encouraged more and more to agree to procedure such as here taken, and perhaps with the aid of legislation to authorize such a procedure, the court would be permitted under such circumstances to apportion the amount of payment by each of the insurers in relation to the degree of negligence of each. This procedure would be one more step towards alleviating calendar congestion.